## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MARK STEELE,**

    **Plaintiff,**

**v.**                                            **CIVIL ACTION NO. 2:09cv3**
                                                             **(Judge Maxwell)**

**JOHN R. SHREVE,**
**WEXFORD HEALTH SOURCES,**
**CORRECTIONAL MEDICAL SERVICES,**
**TERESA WAID,**
**JAMES RUBENSTEIN,**

    **Defendants.**

## REPORT AND RECOMMENDATION
## 42 U.S.C. § 1983

On January 9, 2009, the plaintiff filed a complaint under 42 U.S.C. § 1983 alleging a claim concerning improper dental treatment. On January 13, 2009, an order was entered granting him leave to file without prepayment of fees. This matter is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01 and 28 U.S.C. §1915(e)[1]

## I. THE COMPLAINT

The plaintiff is making an Eighth Amendment claim that the defendants have deprived him of his rights to adequate medical care and to be free of cruel and unusual punishment. In setting forth the

---

[1]28 U.S.C. §1915(e)(2)(B) states:
Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that...
    (B) the action or appeal-
        (I)   is frivolous or malicious;
        (ii)  fails to state a claim on which relief may be granted; or
        (iii) seeks monetary relief against a defendant who is immune from such relief.

facts in support of his claim, the plaintiff has recited from a medical synopsis from health care at the Huttonsville Correctional Center and a written statement from the health care staff which was provided to Commissioner Rubenstein during the administrative grievance procedure.

The medical synopsis and statement indicate that on February 17, 2005, Dr. Shreve surgically extracted one of the plaintiff's teeth. Suturing was not done because Dr. Shreve could see a sinus membrane under where the root came out. On March 9, 2005, the plaintiff was again seen by Dr. Shreve for an emergency dental call. The plaintiff raised the issue of a sinus opening caused by the extraction. However, Dr. Shreve could not see an opening at that time. On April 18, 2005, Dr. Shreve received another health services request concerning continued complications. The plaintiff was seen on April 20, 2005 by Dr. Shreve, who acknowledged the possibility of an opening that he could not detect. Accordingly, on April 27, 2005, the plaintiff was referred off-site to Dr. William A. Myers, II, D.M.D., for examination and evaluation of the site of the recently extracted tooth to determine whether a sinus opening was present. It would appear that said evaluation occurred on, or about, June 1, 2005. Dr. Myers, an oral surgeon, offered an initial diagnostic finding that no sinus opening existed. Accordingly, when Dr. Shreve received a health service request on August 29, 2005 that the plaintiff wished to see him for a follow-up examination, the same was denied. On February 2, 2007, Dr. Shreve received a health services request from the plaintiff complaining of trouble with an upper-left molar. The plaintiff was seen for an emergency dental call later that day, at which time Dr. Shreve noted a small sinus opening at the site of the previous extraction. On February 27, 2007, the plaintiff was seen off-site at the WVU School of Dentistry for removal of several teeth and closure of the sinus opening. On March 22, 2007, Dr. Shreve received a health service request from the plaintiff that indicated his concern that the sinus opening had not healed and felt bigger. Upon examination, Dr. Shreve determined that the sinus opening

2

had enlarged since his return from the WVU School of Dentistry, and the plaintiff would need to be sent back for further correction. Dr. Shreve completed the referral that same date, noting that the sinus opening had not healed properly and had reopened to about 1mm wide by 2 mm long. Dr. Shreve also noted that the plaintiff needed further surgery to achieve proper closure before he constructed a denture for him. The plaintiff was seen at WVU on May 4, 2007, and a decision was made to allow the plaintiff's tissue to heal further before he underwent another surgery. On July 10, 2007, Dr. Shreve received a health service request from the plaintiff concerning another surgery to repair his sinus opening, and Dr. Shreve put a referral into process. On October 2, 2007, the plaintiff was again seen by Dr, Myers, who examined him and the sinus opening was still evident. Dr. Myers noted that two previous attempts at closure had been made without success. On October 17, 2007, Dr. Myers performed surgery in an effort to close the plaintiff's still-problematic sinus opening. On December 5, 2007, Dr. Shreve saw the plaintiff and determined that the sinus opening had reoccurred. While he did not think that further surgery would solve the problem, he called Dr. Myers for a consultation. Later that day, Dr. Shreve did consult with Dr. Myer's by telephone. Dr. Myers agreed that further surgery would be unsuccessful. Dr. Shreve then concluded that because the opening was so small, the new denture could keep it covered during waking hours. Although acknowledging that treatment of the open sinus had not been 100% successful, there had been considerable improvement and further efforts would not make the situation better.

Beyond this recitation, the plaintiff makes no specific claims. Furthermore, he does not indicate that he is currently suffering any pain or problem at the site of the sinus opening. However, the plaintiff seeks a declaration that the acts and omission described in his complaint violated his rights under the Constitution and laws of the United States. He also seeks a preliminary and permanent injunction

3

ordering the defendants to take any and all measures as may be medically available to repair the sinus opening left by Dr. Shreve's surgical extraction and unsuccessful attempts at repair. In addition he seeks monetary damages and a trial by a jury.

## II. STANDARD OF REVIEW

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether is it frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. 1915(e).

A complaint is frivolous if it is without arguable merit either in law or fact. Neitzke v. Williams, 490 U.S. 319, 325. However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim under Fed. R. Civ. P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless," Id. at 327.

## III. ANALYSIS

### A. Wexford Health Services and Correctional Medical Services

42 U.S.C. §1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against

4

a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982). However, it is clear that neither Wexford Health Sources nor Correctional Medical Services is a "person" for purposes of 42 U.S.C. § 1983 and this case should be dismissed with prejudice. See Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989)(claims under § 1983 are directed at 'persons" therefore, a jail, or the like, is not amendable to suit. Accordingly, they are due to be dismissed as defendants.

**B. Teresa Waid**

In order to establish personal liability against a defendant in a § 1983 action, the defendant must be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). The plaintiff does not allege any personal involvement with his medical care by Warden Waid. Instead, he alleges that she is responsible for managing all operations at Huttonsville Correctional Center and is responsible for ensuring that prisoners in her custody and care receive adequate levels of medical, dental and mental healthcare services. When a supervisor is not personally involved in the alleged wrongdoing, she may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom for which she is responsible, see Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982); Orum v. Haines, 68 F. Supp.2d 726 (D.D. W.Va. 1999), or the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and

5

unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), *cert. denied,* 513 U.S. 813 (1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Id. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

The plaintiff makes no allegations in his complaint which reveals the presence of the required elements for supervisory liability against Warden Waid. Further, the undersigned notes that the Fourth Circuit has held that non-medical personal may rely on the opinion of medical staff regarding the proper treatment of inmates. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Thus, Warden Waid could rely on the opinion of Dr. Shreve as to whether the plaintiff was receiving proper care. Consequently, the undersigned finds that the plaintiff has failed to state a claim against Warden Waid, and the complaint against her should be dismissed.

**C. Commissioner Rubenstein**

The United States Supreme Court has held that state officials sued in their official capacities do not constitute "persons" within the language of 42 U.S.C. § 1983. Will v. Michigan, 491 U.S. 58 (1989). The Court considered a suit against a state official in his or her official capacity the equivalent of a suit against the state itself. Id. at 65. The Court concluded that, absent any

congressional intent to override states' immunity, the eleventh amendment bars § 1983 suits against state employees in their official capacity. See id. At 56-57.

Conversely, a suit against an official in his or her individual capacity does not seek payment from the state treasury, but from the personal funds of the individual, and therefore, is not a suit against the state or the state office that the individual occupies, and the individual is not protected by the holding of Will. See Pontarelli v. Stone, 930 F.2d 104, 11 n. 17 (1st Cir. 1991). However, the mere fact that the plaintiff alleges that he is suing Rubenstein in his individual capacity[2] does not make them liable for any alleged wrongdoing. This court must analyze whether the complaint alleges that he acted either outside the scope of his office or, if within the scope, acted in an arbitrary manner grossly abusing the lawful powers of his office. Scheuer v. Rhodes, 416 U.S. 232, 235 (1974).

Here, it is clear that Commissioner Rubenstein was acting within the scope of his position with the Division of Corrections. His only action in this case was in denying the plaintiff's Level 3 grievance. Furthermore, the plaintiff has presented nothing to suggest that he acted in arbitrary manner which grossly abused the lawful powers of his office. Therefore, the plaintiff's complaint against Rubenstein is clearly against his official capacity and is barred by § 1983.

**D. John R. Shreve**

It appears that plaintiff has completely exhausted his administration remedies as required by 42 U.S.C. §1997e. Thus, the undersigned has reviewed the complaint to determine whether plaintiff has

---

[2] In fact, the plaintiff does not indicate whether he is suing Dr. Shreve in either is individual or official capacity. However, giving the most liberal interpretation possible, the undersigned has assumed that he is being sued in h is individual capacity.

stated a claim on which relief can be granted.

The Eighth Amendment protects prisoners from punishments which "'involve the unnecessary and wanton infliction of pain' or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (citations omitted). These principles apply to the conditions of a prisoner's confinement and require that the conditions within a prison comport with "contemporary standard[s] of decency" to provide inmates with "the minimal civilized measure of life's necessities." Id. at 347; see also Farmer v. Brennan, 511 U.S. 825, 832 (1994) (explaining that both the treatment of prisoners and the conditions of their confinement are subject to scrutiny under the Eighth Amendment). Therefore, while "'the Constitution does not mandate comfortable prisons,'" it also "does not permit inhumane one." Id. (quoting Rhodes, 452 U.S. at 349).

To state a claim under the Eighth Amendment, plaintiff must show that defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956

(1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[3]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905, 907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer,

---

[3] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

9

511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

Inadequate dental care can support a valid § 1983 action challenging the conditions of confinement protected by the Eighth Amendment. See Hunt v. Dental Dept.. 865 F.2d 198, 200 (9th Cir. 1989). " [T]he eighth amendment requires that prisoners be provided with a system of ready access to adequate dental care." Id. at 200. See also Dean v. Coughlin, 623 F. Supp. 392, 399 (S.D.N.Y. 1985) (failure to provide routine care violates Eighth Amendment rights).

In the instant case, while the plaintiff may be able to establish that his open sinus cavity is a serious medical condition, satisfying the objective component of his Eighth Amendment claim, he cannot satisfy the subjective component of his Eighth Amendment claim, because there is no evidence that Dr. Shreve acted with deliberate indifference. The information supplied by the plaintiff indicates that he was seen at dental sick calls each time he made a request, but one. Furthermore, he was seen by two off-site specialists, each on more than one occasion. Even if the Court were to find Dr. Shreve negligent in his treatment of the plaintiff, "deliberate indifference" as required by the Eighth Amendment is a standard higher than simple negligence, and negligence alone is not actionable under § 1983. Thus, ordinary medical malpractice based upon negligence in providing care does not state a claim under the Eighth Amendment. See Estelle, supra at 106. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Furthermore, the large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; "no care," rather than "bad care." See e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.), cert. denied, 502 U.S. 960 (1991). Here, even if the Court were to find the plaintiff received "bad care," he did receive care. Therefore, the plaintiff's complaint against Dr. Shreve fails to state an 8th Amendment claim and should be dismissed on that basis.

## IV. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the complaint (Doc.1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915A and 1915(e) for failure to state a claim.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet.

DATED: May 29, 2009

       /s/ James E. Seibert
      JAMES E. SEIBERT
      UNITED STATES MAGISTRATE JUDGE